UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY W. WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CENTRAL CONTRACTING & MARINE, )<br>INC., and *M/V STACEY DIANNE, in rem*, )<br>)<br>Defendants. ) | No.: 3:15-cv-867 |

**DEFENDANT CENTRAL CONTRACTING AND MARINE, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC 43)**

Defendant Central Contracting & Marine, Inc., for its opposition to Plaintiff's Motion for Summary Judgment (Doc. 43), states the following:

I.   Introduction

Plaintiff's Motion for Summary Judgment consists of challenges to the legal sufficiency of the counterclaim (Sections 1-4 of his Argument); a factual argument in which Plaintiff claims he had a good-faith belief that he was fit for duty (Section 5); and an argument concerning waiver (Section 6).

Plaintiff raised the same legal challenges to the counterclaim by way of motion to dismiss (Doc. 33) and CCM responded. (Doc. 41). The motion has not been resolved. CCM's arguments regarding the legal sufficiency of the counterclaim are set forth in Doc. 41, and CCM incorporates the arguments herein. In summary, the counterclaim is supported by substantial, well-reasoned legal authority including a case from this district. The theory behind the counterclaim, namely that a seaman has an obligation to disclose information about a pre-existing medical condition if "the seaman could reasonably be expected to have considered his

medical history a matter of importance" comes from the well-settled principles set forth in *McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968). The relief sought by way of CCM's counterclaim is essential to providing an effective remedy for breach of this obligation. CCM tracked the applicable language from *McCorpen* in its counterclaim, and therefore the pleading requirements are satisfied. Even if affirmative relief is unavailable when a seaman fails to disclose material information about his physical condition, Plaintiff's main case, *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723 (5th Cir. 2013), recognizes that a setoff as requested by CCM is proper. Finally, Plaintiff's argues that by not requiring Plaintiff to undergo a physical examination or conducting an inquiry regarding his history of back injuries, CCM is precluded from asserting claims and defenses under *McCorpen.* But this argument is defeated by the *McCorpen* holding itself, which expressly addresses the situation and recognizes that maintenance and cure are not owed, even when the employer does not require a physical examination or conduct an interview, when the seaman fails to disclose a prior injury that the seaman would consider a matter of importance. *Id.* at 548-9. This holding forms the basis for CCM's counterclaim.

Plaintiff's claim that he had a good faith belief that he was fit for duty is refuted by the facts set forth below. Most significantly, three years before seeking work at CCM, Plaintiff claimed he was totally disabled and filed a claim for Social Security disability benefits based in part on the condition of his back. In support of the application he told the SSA that his back was "pretty much shot." In addition to his disability claim, Plaintiff had a long history of prior back injuries and treatment. This history is impossible to reconcile with a good faith belief that Plaintiff was fit to work as a deckhand.

Finally, with regard to Plaintiff's waiver argument, cases concerning maintenance and cure demonstrate that *McCorpen* claims are not waived by paying benefits. Even under the state law waiver case law cited by Plaintiff, the circumstances here are nowhere close to supporting a conclusion that CCM waived its *McCorpen* claims. As demonstrated below, CCM began paying maintenance and cure prior to learning of Plaintiff's extensive history of low back injuries and treatment. Once it began accumulating information on the subject, it acted promptly to pursue legal relief. The circumstances show CCM exercised, not waived, its rights.

II. Statement Regarding Material Facts

Plaintiff's factual argument that he had a good faith belief that he was fit for duty is not supported by the evidence he cites and refuted by other evidence he does not cite. The following evidence demonstrates that Plaintiff could not have had a good faith belief that he was fit for duty when he sought employment at CCM in October, 2014:

A. CCM's Statement of Material Facts

1. In May of 2011, Plaintiff filed an application for disability benefits with the Social Security Administration (Ex. 1). The application was based in part on Plaintiff's claim that he was disabled based on the condition of his low back.[1] As part of the application, Plaintiff filled out and signed a "Function Report." He indicated that his injury affected his abilities, among other things, to lift, bend, and sit. In explaining these physical limitations, Plaintiff stated, "My back is pretty much shot from all the hard jobs I've had over the years." (Ex. 1, Function Report, p. 8). Although the ALJ declined to award benefits on the grounds that Plaintiff was not disabled from all employment, the ALJ nevertheless determined, in a Decision that was provided

---

[1] The application was also based on other conditions that are not part of Plaintiff's claim in this case. Information regarding those conditions has been redacted in accordance with the Court's order denying CCM's motion to file the material under seal, Doc. 45.

to Plaintiff, that Plaintiff's "degenerative disc disease" constituted a "severe impairment." (Ex. 1, Decision, p. 4). The ALJ further determined that Plaintiff was "unable to perform past relevant work" which was identified as a tractor-trailer driver, roofer and handyman. (*id.* p. 16). Plaintiff was limited to "unskilled medium work" (*Id.*) A Physical Residual Functional Capacity Determination found that Plaintiff was restricted in his ability to lift and/or carry: He could do so with 20 pounds occasionally and 10 pounds frequently. (Ex. 1, Functional Capacity Assessment). In addition to Plaintiff's own statement concerning the condition of his back, and the findings of the ALJ, the following additional facts demonstrate Plaintiff did not have a good faith belief he was fit for duty as a deckhand.

2. Plaintiff injured his back in 1999 when he was "jerking up a ratchet" while working as a deckhand for Lewis & Clark Marine. He received medical treatment, retained counsel, filed a lawsuit, and received a settlement. He never returned to work for Lewis & Clark following the injury. (Doc. 43-3, pp. 27-34).

3. Plaintiff injured his back while working as a truck driver for Althoff Trucking on January 11, 2008 when he slipped and fell inside a trailer. He described worsening pain in the weeks following the injury, rated it as 10 out of 10 on the pain scale, scored 74% ("crippled") on a disability questionnaire, reported radiating pain to his buttocks, and paresthesias of both legs. (Ex. 3). An MRI revealed degenerative discs and facet changes at L3-4, L4-5, and l5-S1, with a moderately large midline focal protrusion at L4-5 that "does affect the midline dura." (Ex. 4). He was released to light duty work and told that if it was not available, he needed to decide whether he wanted to try returning to regular duty or find other work "which might be less strenuous on his back." Ex. 3, Dr. Bernardi note 3/26/08).

4. Plaintiff did not return to work of Althoff Trucking. (Doc. 43-3, p. 59).

5. He settled a workers' compensation claim against Althoff for an amount representing 11% disability of the body as a whole referable to his low back. (Ex. 2).

6. Plaintiff attempted to lay tile on or around April 17, 2008 and experienced pain in his back and went to the emergency room at Jefferson Memorial Hospital for treatment. (Ex. 5).

7. He saw a medical consultant at Jefferson Memorial Hospital on July 23, 2008 for low back pain, and was diagnosed with "chronic lower back pain secondary to lumbar vertebral disc disease." (Ex. 6).

8. On August 15, 2008 Plaintiff was back at the Jefferson Memorial Hospital for back pain from pushing a dryer into a truck. He told the examiner he had bulging discs and was experiencing numbness down both legs. He ambulated with difficulty. (Ex. 7).

9. He had another consultation for back pain in May, 2009. The pain was noted to "going on for almost a year." (Ex. 8).

10. He had a CT scan in August, 2010 following a motor vehicle accident that led to back pain. The impression was "degenerative changes involving the lower lumbar spine." (Ex. 9).

11. On March 31, 2011, Plaintiff told Dr. Sunil Chand that he had a herniated disc in his lumbar spine. (Ex. 15, p. 20).

12. Records from Desoto Family Practice reflect that Plaintiff was seen there on July 19, August 6, and November 12, 2012 for chronic lumbar pain and degenerative disc disease, and received medication for the condition. (Ex. 11).

13. He was treated at Chands Medical Clinic on June 5, 2014 for back pain that arose when he bent down to pick up a tarp. (Ex. 12). The problem persisted and he was seen again on June 21, 2014 by Nilma Chand. M.D. Her examination of Plaintiff's lumbar spine revealed loss

of lumbar lordosis, indicative of severe spasm. He had tenderness and stiff muscles in his lower lumbar spine as well. Again, Plaintiff received mediation for the condition. (Ex. 16, pp. 9-14).

14. Plaintiff knew when he sought work at CCM in October, 2013 that deckhand work was very heavy physical work requiring him to lift heavy objects including ratchets weighing in the neighborhood of 75 pounds. (Doc. 43-3, p. 153).

    B. Response to Plaintiff's Statement of Material Facts

CCM's response to Plaintiff's "Statement of Material Facts" beginning on page 3 of his motion is as follows:

1.-3. CCM does not dispute these facts.

4. CCM does not dispute that pilot Duncan did not observe Plaintiff in any pain, but it is important to note that Duncan's statement applies both to before and after the alleged accident. (Duncan depo., Doc. 43-2, p. 56).

5. CCM admits that Plaintiff acknowledged a history of back pain in his deposition, but the fact is not material since the relevant the inquiry focusses on what Plaintiff knew and disclosed at the time he was hired.

6. CCM disputes that Plaintiff was released with no restrictions by the doctor who treated him for his work-related injury in January, 2008. Plaintiff cites only his own testimony and ignores what the doctor actually said. The doctor, Robert Bernardi, M.D., wrote, "If there is light duty work for Mr. Williams, I would suggest that he try to do this in order to facilitate a transition back to regular duty work. If light duty work is not available, then I think Mr. Williams needs to decide whether he wants to try returning to regular duty work or whether he wants to see [sic] out other types of employment which might be less strenuous on his back. (Ex. 3, Note

from March 26, 2008). Williams did not return to regular duty work for the employer he was working for at the time of his 2008 back injury. (Doc. 43-3, p. 59).

      7.      This statement appears to contain a typographical error. As written, it indicates Plaintiff believed his prior back problems would be a matter of interest to CCM. Assuming Plaintiff intended to write he did not believe his prior back problems would be a matter of interest, then this fact is disputed. The testimony Plaintiff cites does not relate to his belief about the materiality of his back condition. On the other hand, Plaintiff's statement in support of his application for disability benefits that his "back was basically shot" does demonstrate what Plaintiff believed and defeats his motion.

      8.      This statement appears to contain a typographical error and does not make sense. To the extent Plaintiff is suggesting his surgeons thought his back condition was work related and not due to prior injury, the records Plaintiff refers to do not support the statement. And in any event, the statement is immaterial because it does not relate to Plaintiff's subjective belief at the time he sought employment at CCM, which is the only element of the *McCorpen* inquiry that Plaintiff contests in his motion.

      9.      The records submitted by Plaintiff do not support the statement concerning Dr. Gornet's conclusions regarding the cause of the herniation at L4-5. Dr. Gornet's note concerning his initial spine evaluation states that "based on the information I have," there was a causal connection between Plaintiff's symptoms and the alleged accident at work. (Ex. 13). However, the observation was without the benefit of information concerning Plaintiff's history of prior back problems. The note states, "He does not recall any previous problems of significance with his low back." (*id*.) And as with No. 8, the statement is immaterial because it does not relate to

Plaintiff's subjective belief at the time he sought employment at CCM, which is the only element of the *McCorpen* inquiry that Plaintiff contests in his motion.

10. This fact is disputed. The records cited do not support it. As with Nos. 8 and 9, the statement is immaterial because it does not relate to Plaintiff's subjective belief at the time he sought employment at CCM, which is the only element of the *McCorpen* inquiry that Plaintiff contests in his motion. Although CCM sees no support provided by plaintiff for his statement in paragraph 10, Dr. Gornet has testified that the pre-existing condition of Plaintiff's lumbar spine contributed to the conditions that Dr. Gornet addressed through surgery. (Ex. 17, p. 69).

11. The records Plaintiff cites do not support that the primary care physician evaluated Plaintiff for back pain eight days prior Plaintiff's employment at CCM. It is noteworthy that the records submitted by Plaintiff show that on his visit with Dr. Chand following the alleged accident at CCM, there is no mention of any issue concerning back pain or injury. (Doc. 43-5, p. 3).

12-17. Plaintiff correctly states the contents of CCM's counterclaim. CCM did not know about Plaintiff's prior back problems when it started paying maintenance and cure. As reflected Ex. 6 to Plaintiff's motion, CCM's attorneys were trying to investigate Plaintiff's claim for maintenance and cure including trying to collect records on November 18, 2015 and sought Plaintiff's counsel's cooperation in providing medical authorizations which to that point had not been provided. In fact, CCM's attorneys had been attempting for a long time, without success, to obtain authorizations to obtain Plaintiff's medical records (Ex. 14). CCM expressly reserved its rights to pursue reimbursement in the event the medical information showed maintenance and cure was not owed. (Id). The history regarding CCM's efforts to reconstruct the history of Plaintiff's back problems is set forth in Doc. 30 wherein CCM requested an extension of the

deadline for expert disclosure because as of April 22, 2016 it was still in the process of assembling the history of Plaintiff's prior back problems. Upon obtaining information showing a significant history or prior back problems, CCM acted promptly to move to amend its pleadings to raise the *McCorpen* issue. (Doc. 25).

    III.    Discussion

        A.    Plaintiff Did Not Have a Good Faith Belief that he was fit for Duty

At the outset, it should be noted that the summary judgment procedure is not an appropriate vehicle for determining what Plaintiff believed or whether his belief was in good faith or was reasonable.

> It is rarely appropriate on summary judgment for a district court to make a finding on state of mind. *Alexander v. Wisconsin Dept. of Health & Family Serv.*, 263 F.3d 673, 681 (7th Cir.2001) (cases involving questions of intent and credibility are inappropriate for summary judgment); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir.1985) (" 'Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.' ") (quoting *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir.1976), *cert. denied,* 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977)).

McGreal v. Ostrov, 368 F.3d 657, 677 (7th Cir. 2004).

Apart from this legal obstacle to the relief Plaintiff seeks, the evidence demonstrates Plaintiff's argument that he had a good faith belief he was fit for duty to do the unrestricted heavy labor required of a deckhand is impossible to square with the facts. First, it is refuted by his own statement that his back was "shot." The statement was made to support his claim that he was disabled from working and on that basis entitled to benefits from the SSA. Claiming to be disabled because his back was "shot" by itself precludes any suggestion Plaintiff had a good faith he was fit for duty. And even though Plaintiff's claim for disability benefits was denied, the ALJ found that Plaintiff had a severe impairment arising from degenerative disc disease and that he

had significant exertional limits as a result. This information was provided to Plaintiff and he was aware of it when he sought work at CCM.

Plaintiff was familiar with the physical demands of the deckhand job prior to applying to work at CCM. Based on his experience at Lewis & Clark Marine, he knew that "jerking up a ratchet" could lead to a back injury. That is what happened to him at Lewis & Clark and he sued Lewis & Clark on account of the injury.

The evidence concerning the condition of Plaintiff's back is not limited to what he said about it or what the SSA found. In addition, the evidence shows Plaintiff had regular treatment for back problems, with frequent visits to the emergency room, and treatment by his primary care physicians. More than one physician described his back problems as chronic.

Plaintiff's efforts to demonstrate his good faith belief are based mostly on his own testimony, which in many cases is demonstrably false. For example, he cites his testimony that the last time he had back pain prior to working at CCM was a couple years before, maybe a year and a half. (Plaintiff's motion, p. 54). However, we know from the medical records that Plaintiff was complaining of significant back pain to and seeking medical treatment from Dr. Chand only four months prior to starting work at CCM. And it was not an isolated event. The medical records show Plaintiff had similar problems throughout the period from his work-related back injury in 2008 through 2014. His first reported back injury was in 1999, also while working as a deckhand.

Plaintiff also suggests he believed he was under no restrictions from Dr. Bernardi, who treated him for his back injury in 2008. However, Dr. Bernardi's records suggest otherwise. Dr. Bernardi released Plaintiff to do light duty work. As to whether Plaintiff could return to his prior level of work, Dr. Bernardi was less clear, but suggested it might be in Plaintiff's interest to try

something less strenuous than his prior job. And it is clear from Plaintiff's actions that he believed something less strenuous was needed, as Plaintiff never returned to his regular job. Finally, Plaintiff's suggestion that he was convinced based on advice from Bernardi in 2008 that he could work without restrictions is impossible to reconcile with Plaintiff's actions in 2011 claiming he was totally disabled and that his back was "pretty much shot."

Maintenance and cure have been denied, even when no new-hire physical exam was required and no inquiry was made regarding prior injury, in circumstances similar to this case. For example in *Foret v. St. June, LLC*, 2014 WL 4539090 (E.D. La) the court granted summary judgment for the employer on *McCorpen* grounds. The court noted that given the plaintiff's history of working on boat, "he should be familiar with the expectations of potential employers regarding the disclosure of past medical history." Because the plaintiff failed to disclose a history of a prior back injury, maintenance and cure was denied. Moreover, a reading of *Foret* suggests the employer met its burden under *McCorpen* based on a single episode of treatment for low back injury prior to seeking employment; here by contrast, Plaintiff had an extensive history, going back years prior to seeking employment at CCM. And in *Firestone v. Richard C. Gibson and Billy B., Inc.*, 2010 WL 4683991 (S.D. Ala.), the fact that the plaintiff was determined to be disabled by the SSA was used to preclude a finding he had a good faith belief he was fit for duty, and no maintenance and cure was owed even though the plaintiff was not asked about his medical history.

      B.    Waiver

An employer's claims and defenses under *McCorpen* are not waived by paying maintenance and cure benefits. According to *Boudreaux*, which Plaintiff cites extensively, "to the extent the employer has already paid benefits, it is entitled to recoup them when there are

damages to offset." 721 F.3d at 728. "The payment of maintenance and cure prior to suit does not constitute a waiver of any defenses which might be asserted." *Thurman v. Patton-Tully Transportation Co.*, 619 So.2d 879, 881 (La. Ct. App. 3rd Cir. 1993). The rule stems from the recognition that employers face potential penalties for failure to pay maintenance and cure. *Hokanson v. Maritime Overseas Corp.,* 1974 A.M.C. 948, 956 (E.D. La. 1974)(payment of maintenance and cure "does not estop the employer from contesting the payment of those monies at the time of trial.").

Even under the state law principles that Plaintiff cites in his motion (*Delta Consulting Group, Inc. v. R. Randle Construction Co.,* 554 F.3d 1133 (7th Cir. 2009), CCM's actions in paying maintenance and cure do not come close to waiving its *McCorpen* claims.  There was no "voluntary and intentional relinquishment of a known right." In *Delta*, the court found waiver from a party's failure to object to invoices, and failure to seek return of money paid. *Delta*, 554 F.3d at 1141. Here, the facts demonstrate that CCM put Plaintiff on notice that CCM was reserving its rights to seek repayment. (Doc. 43-6, Ex. 14 to this document). Upon learning of Plaintiff's history of prior back injuries, CCM acted promptly in asserting a claim seeking repayment. These actions demonstrate that CCM was asserting its rights, not waiving them. Indeed, under the state law waiver principles that Plaintiff relies on (which as set forth above are not applicable in the context of maintenance and cure), for waiver to apply, "the evidence must show a 'clear, unequivocal and decisive act of a party' demonstrating an intent to waive a known right." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 651 (7th Cir. 2014)(*quoting Occidental Fire & Cas. Co. of North Caroline v. Continental Bank, N.A.,* 918 F.2d 1312, 1320 (7th Cir. 1990). In *Anderson,* the Seventh Circuit found no waiver of a defense related to the statute of repose from a letter by the defendant offering Plaintiff "compassionate relief." Because

the defendant's letter expressly referred to the statute of repose, the court found no waiver: "That is an expression of an intent to advocate, not abandon a known right." *Id*. Similarly here, CCM put Plaintiff on notice that it was reserving its right to seek repayment of maintenance and cure benefits, and upon learning of facts to support a claim for repayment, it moved promptly to assert the claim. As in *Anderson*, the circumstances demonstrate that CCM was exercising its rights, not waiving them.

IV. Conclusion

For the reasons herein stated, Plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

GOLDSTEIN and PRICE, L.C.
and Douglas E. Gossow (06200738)
and Giles B. Howard (6319251)


By:  /s Douglas E. Gossow
One Memorial Drive, Suite 1000
St. Louis, MO 63102-2449
Telephone: (314) 516-1700
Facsimile: (314) 421-2832
doug@gp-law.com
giles@gp-law.com
**ATTORNEYS FOR DEFENDANT CENTRAL CONTRACTING & MARINE, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, and that service upon all counsel was made using said system.

By:  /s/ Douglas E. Gossow