**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TIMOTHY W. WILLIAMS,     )
              Plaintiff,    )
                     )    No.: 3:15-cv-867-SMY
vs.                )
                     )
CENTRAL CONTRACTING &     )
MARINE, INC.,             )
and *M/V STACEY DIANNE, in rem*,  )
           Defendants.  )

### Plaintiff's Response to Order to Show Cause

Both Plaintiff and the undersigned attorneys take the allegations in the Court's order very seriously. Nothing herein is meant to be disrespectful of the Court, or to demean the gravity of the issue. Plaintiff's attorneys believed that all testimony they elicited in this Court was true and accurate. Exs. 1-4. If they had not believed that, they would not have elicited it. *Id.* Counsel have spent many hours reviewing records, to see if they overlooked anything that would have indicated Plaintiff's testimony in this Court was untrue. No such indication was ever found. Ex. 1, par. 3. A judgment that is more than a year old cannot be set aside under these circumstances. *See In re Golf 255, Inc.*, 652 F.3d 806, 810 (7th Cir. 2011) ("[A] witness's lies are not fraud on the court [within the meaning of Rule 60(d)(3)] unless a lawyer in the case is complicit in them.") Further, as the Court noted, Defendant filed a Satisfaction of Judgment signed by plaintiff's counsel that authorized the Clerk "to cancel and discharge the judgment." Doc. 78. *Id.* Relief from judgment was thus already provided, or at least agreed to by the parties, per Fed. R. Civ. P. 60(b)(5).

Counsel have independently verified Plaintiff is still receiving Suboxone. Ex. 5, p. 7 (redacted pursuant to Local Rule 5.1(d)). On June 25, 2020, counsel obtained Williams' certified pharmacy records, which indicate that from July 3, 2018 through May 26, 2020, Williams

received some version of buprenorphine, including Suboxone, in some combination, 91 times. Ex. 5, certification is on page 14. The two entries for May 26, 2020 indicate those were supposed to be at least 30-day supplies. *Id.*, p. 7. Dr. Chand testified he treated plaintiff with Suboxone, which is a combination of buprenorphine and naloxone.  February 13, 2017 Trial Transcript at p. 99, lines 5-17. Plaintiff has not abandoned the treatment his physician testified would continue into the future.

As the Court noted, Plaintiff gave testimony in St. Francois County that is irreconcilably inconsistent with his testimony in this Court.[1] Plaintiff's counsel will not try the Court's patience with hyper-technical explanations of why his testimony might be consistent across both cases. It's not. Under Seventh Circuit precedent, however, inconsistent testimony in a subsequent case, or even uncontroverted evidence of perjury in this case, cannot and would not support vacating a 2018 judgment. *In re Golf 255*, 652 F.3d at 810. Here, no one has suggested any of Plaintiff's lawyers were complicit in any lies by Plaintiff or any other witness. They were not. Exs. 1-4.

I.    **The Seventh Circuit Interprets Rule 60(d)(3) To Hold That "Simple Perjury" Is Insufficient To Set Aside A Judgment, And To Require Attorney Knowledge Of The Fraud, Which Is Not Present Here**

Federal Rule of Civil Procedure 60(b)(3) would permit a judgment to be set aside for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."[2] But a motion for relief under that Rule must be brought within a year of the judgment. Fed. R. Civ. P. 60 (c)(1).

---

[1] The St. Francois County judge found Williams' testimony in the Missouri case to be "not credible." Doc. 79-1 at 8, ¶36.

[2] Thus, the Seventh Circuit vacated a judgment where it was disclosed within a year of judgment that witnesses  would testify that they had perjured themselves in the course of the litigation, in *Peacock Records, Inc. v. Checker Records, Inc.*, 365 F.2d 145 (7th Cir. 1966); there, a Rule 60(b) motion to vacate a judgment entered on September 21, 1964 was filed on June 22, 1965.

By contrast, a court has the inherent power to set aside a judgment for "fraud on the court," without the one-year limitation. Fed. R. Civ. P. 60(d)(3). But the Seventh Circuit has explained that the definition of "fraud on the court" within Rule 60(d)(3) must be narrow, and cannot encompass perjury by witnesses:

> The problem of definition arises from the fact that a motion to set aside **a judgment on the ground of fraud on the court has no deadline. It must therefore be defined narrowly lest it "become an open sesame to collateral attacks, unlimited as to the time within which they can be made by virtue of the express provision in Rule 60(b) [now 60(d)] on this matter, on civil judgments." [citations] Examples are bribery of a judge or exertion of other undue influence on him, jury tampering, and fraudulent submissions by a lawyer for one of the parties in a judicial proceeding, such as tendering documents he knows to be forged or testimony he knows to be perjured**.

*In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011) (emphasis added), *citing inter alia In re Whitney–Forbes, Inc.,* 770 F.2d 692, 698 (7th Cir.1985).

*Golf 255, Inc.* explained that "simple perjury" is not fraud on the court unless the perjury was procured by counsel in the case: "**a witness's lies are not fraud on the court unless a lawyer in the case is complicit in them**." *Id. at* 810 (emphasis added).

This Court's Order cited *Matter of Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985), stating it stood for the proposition that "Plaintiff's contradictory sworn statements and a witnesses' hidden personal interest in the outcome of this litigation may constitute 'circumstances where the impartial functions of the court have been directly corrupted.'" Doc. 79 at 2-3. But that case *rejected* allegations that a fraud on the court had been committed due to the deception of persons involved in the litigation; it stated the definition of when the functions of a court have been "directly corrupted" requires "bribery of a judge" or some similar "improper influence with the court."

> Finally, **the trustee's indirect allegations of fraud on the court must be rejected.** Fed.R.Civ.P. 60(b) expressly provides that it does not limit the power of a court to set aside a judgment or order for fraud upon the court. … **Fraud on the**

**court involves a particular type of fraud which is "directed to the judicial machinery itself,"** *Bulloch v. United States,* 721 F.2d 713, 718 (10th Cir.1983), **and which involves circumstances where the impartial functions of the court have been directly corrupted**. 11 C. Wright & A. Miller, *supra,* at § 2870, p. 254. **The cases where it has been found have involved the most egregious conduct involving " 'corruption of the judicial process itself,' "** *id.* at § 2870, p. 255 (quoting *Lockwood v. Bowles,* 46 F.R.D. at 632), **such as bribery of a judge and improper influence with the court**. 11 C. Wright & A. Miller, *supra,* at § 2870, p. 255.

*Id.* at 698-99 (emphasis added)

*In re Golf, 255, Inc.* explained, "… perjury by witnesses is a known danger and lawyers for the adverse party have ways of countering it through discovery, other investigatory means, and cross-examination …" *Id.* at 809. By contrast, "perjury and other outright fabrications by lawyers are less common and more difficult to ferret out …" *Id. "***That is the practical reason why a lawyer's perjury is deemed fraud on the court but simple perjury by a witness (perjury not suborned by a lawyer in the case) is not.***"* *Id.* (emphasis added).

The Seventh Circuit has been consistent on this issue. In *Kennedy v. Schneider Electric*, 893 F.3d 414 (2018), it noted, "Examples [of fraud on the court] include situations where 'a party bribes a judge or inserts bogus documents into the record.'" *Id.*, quoting *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997). *Kennedy* affirmed a district court's decision to impose Rule 11 sanctions on a party claiming "fraud on the court" justified setting aside a judgment, because there was no evidence the party's counsel knew any statements were perjured. *See Kennedy v. Schneider-Electric*, 2017 WL 781608, *8, Case No. 2:12-CV-122-PRC (N.D. Ill. March 1, 2017) ("Plaintiff's argument for fraud on the court lacked evidentiary support because there is no evidence that Defendant's counsel knew the statements to be perjured and because the arguments that the statements must be perjured are logically flawed."). In *Matter of Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988), the Seventh Circuit noted the definition of "fraud on the court" within Rule 60(d)(3) had to be more narrow than

Rule 60(b)(3), so that the one-year time limit on Rule 60(b)(3) would have meaning. *Id.* at 1018.

"Fraud on the court" within Rule 60(d)(3) "must involve corruption of the judicial process itself," rather than perjury or misrepresentation by a party or other witness. *Id.*

The Seventh Circuit has also foreclosed use of the "any other reason that justifies relief" provision of Rule 60(b)(6), stating, "You cannot use the catch-all provision [of Rule 60(b)(6)] to get around the express one-year limitation on motions based on fraud in procuring a judgment. Otherwise the limitation would be nugatory." *Id.*

The rationale for the narrow definition of "fraud on the court" within Rule 60(d)(3) is that society's interest in litigation coming to an end outweighs any interest in revisiting a dispute between private parties:

> **This case must be ruled by** *United States v. Throckmorton*, **98 U.S. 61, 68, 25 L.Ed. 93, which has been the controlling case upon the subject for more than a half century**. … After considering all of the authorities, both English and American, the court, discussing the opinion of Chief Justice Shaw in Greene v. Greene, 2 Gray (Mass.) 361, 61 Am.Dec. 454, said:
>
>> 'The Chief Justice says that the court thinks the point settled against the complainant by authority, not specifically in regard to divorce, but generally as to the conclusiveness of judgments and decrees between the same parties. He then examines the authorities, English and American, and adds: 'The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. **But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted**.' It is otherwise, he says, with a stranger to the judgment. This is said in a case where the bill was brought for the purpose of impeaching the decree directly, and not where it was offered in evidence collaterally. We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered.

'**That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases.**'

*T.J. Moss Tie Co. v. Wabash Ry. Co.*, 71 F.2d 107, 109 (7th Cir. 1934) (emphasis added).

In *LinkCo, Inc. v. Naoyuki Akikusa*, 367 Fed.Appx. 180 (2d Cir. 2010), the Second Circuit noted that in order for Rule 60(d)(3) to have a narrower definition than Rule 60(b)(3), "fraud on the court" within the meaning of Rule 60(d)(3) cannot be defined to include perjury by a witness, which would be tantamount to "a fraud upon a single litigant." *Id.* at 182-83.

The Seventh Circuit has explained that one of the reasons finality in judicial proceedings is valued is, "the need for party reliance in the finality of judgments and the need to conserve judicial resources for other litigation as yet unresolved." *McGeshick v. Choucair*, 72 F.3d 62, 63 (7th Cir. 1995). This interest in finality is important in this case because various third parties were paid from the settlement including five children who received child support, as well as Drs. Mall and Gornet, whose bills for treatment were paid. *See* Ex. 1 Dripps Affidavit, pars. 14, 15.

Here, none of the attorneys suborned perjury. Exs. 1-4. No one has suggested that bribery of a judge or a forged return of service of summons or anything similar occurred. Notably, Chand filed the Missouri "Petition for Rent" (Ex. 6) on November 9, 2018 and Williams filed the counter-petition (Ex. 7) alleging that Williams provided Chand with "certain valuable services, labor, maintenance and repair at various locations" on December 31, 2018 - both within one year of the April 3, 2018 judgment. *See* Doc. 75. These court filings were public records easily available to defendant had it chosen to look. *See Lee v. Watson*, 20-2128, 2020 WL 3888196, at *3 (7th Cir. July 10, 2020), cert. denied, (20A7), 2020 WL 3964235 (U.S. July 14, 2020) (publicly available court record was available with reasonable diligence); *Owens v. Boyd*, 235

F.3d 356, 360 (7th Cir. 2000), as amended (Jan. 22, 2001) ("the lack of a petition was a matter of public record, which reasonable diligence could have unearthed"). While Plaintiffs' counsel had no incentive to monitor another state's public filings following the settlement, and were not aware of this suit until this Court's 2020 Order (*see* Exs. 1-4), it is nevertheless true that the rental agreement and Williams' claim that he provided labor for Chand were matters that could have been discovered and raised by Defendant before April 3, 2019.

## II. The St. Francois County Circuit Court Held that Plaintiff's Testimony About His Physical Activities in that Court Were Not "Credible" Because of His Testimony in this Court; that Finding Alone Precludes Any Finding of Clear and Convincing Evidence that He Perjured Himself in this Court

While the case law on Rule 60(d)(3) should resolve the matter, the findings by the Circuit Court of St. Francois County, Missouri preclude any finding of "clear and convincing evidence" of perjury by Plaintiff in this Court. Even if Defendant had sought relief within a year of the judgment pursuant to Rule 60(b)(3), it could not prevail: "The party complaining of fraud [in a Rule 60(b)(3) motion] must establish the fraud by clear and convincing evidence and must demonstrate that the fraud prevented it from fully and fairly presenting a meritorious claim." *Philos Technologies, Inc. v. Philos & D, Inc.*, 802 F.3d 905, 917 (7th Cir. 2015). There is no "clear and convincing evidence" here because the St. Francois County court held that Plaintiff's testimony in front of that court, and the journal he used to bolster it, were "not credible" because it contradicted the testimony he provided to this Court. *See* Doc. 79-1 at 8, ¶36 ("Further. **the Court found Defendant not to be a credible witness** based upon his admission on the record of offering testimony in the present case and his journal, Exhibit A, which directly contradicted the testimony he presented to Judge Yandle in the injury trial." *Id.* (emphasis added). This was not a stray finding - the very next sentence in that Order is, "ACCORDINGLY JUDGMENT ON ALL

COUNTS OF DEFENDANT'S COUNTER-PETITION IS RENDERED AGAINST DEFENDANT AND IN FAVOR OF PLAINTIFFS." *Id.* (all caps in original).

Further, that court's findings were made after it framed its choice as follows: " … this Court is faced with the dilemma of determining which reality exists: (I) Defendant performed all of the tasks he seeks remuneration for in this action and defrauded Judge Yandle; or (2) Defendant did not perform the actions from his notebook and has perjured himself to this Court." *Id.* at 5, ¶25. The Circuit Court chose option (2), and entered judgment against Plaintiff. *Id.* at 8, ¶36. That finding, given that court's framing, precludes a finding of option (1) here.

Thus, while there is evidence in the record showing inconsistency between what Plaintiff testified to in this Court and what he testified to in the St. Francois County court, the very court in which he provided the subsequent testimony creating the inconsistency has held that it is the subsequent testimony that is not "credible." That finding is consistent with the certified pharmacy records showing continued use of Suboxone and/or its equivalents. Ex. 5.

## III. At Trial Defendant Cited Testimony by Plaintiff and His Physicians to Show He Was Not Physically Limited in its 2017 Proposed Findings

As to Plaintiff's testimony to this Court, Defendant was already citing it and testimony by Dr. Gornet to suggest he was not injured in any significant way. *See* Ex. 11 (Defendant's Proposed Findings), p. 7, ¶21 ("Although on direct examination Williams testified he can't get on his hands and knees for an hour, **he admitted on cross examination that after his surgery he has been able to lay tile for extended periods, and the work required a lot of bending over** (Tr. 317)." (emphasis added); *id.* at p. 10, ¶27 ("**Williams can do work around the house. He can clean and buy groceries and work on automobiles. Certainly if he can lay tile for extended periods of time, he can do the kinds of things than an average person needs to do to maintain a household.**"); (emphasis added); *id.* at p. 6, ¶13 ("On cross examination, plaintiff

agreed that he experienced pain in his back from time to time prior to the alleged accident at CCM (Tr. 280.) **He further agreed that the surgery by Dr. Gornet relieved the pain in his back** (Tr. 316) and he is very happy with the outcome (*Id.*)") (emphasis added); *see also id.* at 7, ¶17 ("**Dr. Gornet testified that Williams has no permanent disability and that he can work.** (P. Ex. 127, p. 25, 73).") (emphasis added).

### IV.    Dr. Chand's Testimony About Suboxone Use Was Truthful Then, and Plaintiff's Continued Use of it Has Been Independently Verified

At trial, Dr. Chand testified that he treated plaintiff with Suboxone which is a combination of buprenorphine and naloxone.  February 13, 2017 Trial Transcript at 99, lines 5-17. This Court's show cause Order notes Dr. Chand testified that Plaintiff's injuries would require lifelong use of Suboxone. Doc. 79 at 1; *and see* February 13, 2017 Trial Transcript at p. 148, lines 10-14. That testimony, at least to date, has been corroborated by certified records from plaintiff's pharmacy. Ex. 5; certification is on page 14. Williams' pharmacy records, obtained on June 25, 2020, indicate that from July 3, 2018 through May 26, 2020, on which he obtained two 30-day prescriptions, Williams received buprenorphine, in some combination, often listed as Suboxone, 91 times. *Id.* at 7. These records demonstrate that long after plaintiff and Chand testified and long after this Court's order, Williams continues to use Suboxone or an equivalent, albeit now prescribed by a different provider than Dr. Chand.  These drugs were prescribed by Fred William Rottnek, Joanne M. Waltman, and Shannon Jennings, apparently after Williams parted ways with Chand.  *Id.* The pharmacy records show that Williams received twenty prescriptions for Bupren-Nalox, fifty-seven prescriptions for Suboxone and four prescriptions for "Subsolv" [*sic*].[3] *Id.* The generic buprenorphine and naloxone combination and the name-brand Suboxone and Zubsolv all contain buprenorphine.   https://www.samhsa.gov/medication-

---

[3] Plaintiff's counsel believes this is a misspelling of Zubsolv, a name brand buprenorphine compound.

assisted-treatment/treatment/buprenorphine (last visited July 16, 2020 at 10:23 p.m.). Thus, even after the trial, this Court's judgment, and the settlement with defendant, Williams continued to take Suboxone or the equivalent regularly, and continues to take it currently.

**V.      Dr. Chand Provided Favorable Deposition Testimony for Plaintiff on July 5, 2016, *Before* the August 16, 2016 Document Referred to in the State Court Order; the State Court's Finding that He Only Provided Favorable Testimony *After* That Agreement is Incorrect**

The St. Francois County order states, "Upon learning of Defendant's Jones Act case. Dr. Sunil agreed to provide beneficial expert testimony as a treating physician before Judge Yandle *after* Defendant agreed to purchase the Property from the Plaintiffs when Defendant received the proceeds from the Jones Act case." Doc. 79-1 at 3, ¶17 (emphasis added). The Missouri court found this agreement to purchase was entered into on August 16, 2016. *Id.* at 2, ¶13. But Dr. Sunil Chand testified ***before*** that; he gave his deposition in this case on July 5, 2016. Ex. 9. His trial testimony was consistent with that deposition testimony. *See id.* So the proposition that he withheld his testimony until there was some agreement to buy the house is contradicted by the record in these cases.

In the July 5, 2016 deposition, which occurred *before* the August 16, 2016 document was signed by Williams, Dr. Sunil Chand testified that he continues to see Williams once a month. Ex. 9, Chand dep. at page 47, lines 5-12. Because of the pain Williams experienced from the injury on the barge, "I adjusted his medication dose [of Suboxone] up a little higher." *Id.*, page 53, line 8-page 54, line 8.  Thus, Chand gave testimony favorable to Williams *before* the purported August 16, 2016 transaction.

**VI.    A Finding of a Witness Having an Additional Financial Interest in the Litigation Cannot Justify Setting Aside a Judgment Under Rule 60(d)(3)**

Prior to this Court's Order on June 18, 2020, Plaintiff's counsel had no idea there were any allegations of an agreement between Plaintiff and Dr. Chand for Plaintiff to buy a house from Dr. Chand, much less that plaintiff had agreed to fund the purchase of the house from proceeds of the case. Exs. 1-4. As of trial, their understanding was Dr. Chand's interest in this matter was limited to recovering a lien for unpaid medical bills. *Id.* After this case settled, Plaintiff's counsel paid medical liens of $10,303.98 to Best Medical and $4,392.84 to Apollo Healthcare, both of which are facilities operated by the Drs. Chand. Ex. 1, par. 12. To put this in perspective, St. Louis Spine & Orthopedic Surgery Center was paid $94,438.92, CT partners of Chesterfield was paid $5,203.20 and MRI Partners of Chesterfield was paid $6,150.00 for their liens. Ex. 1, par. 14. Section 430.225 R.S.Mo. and 770 ILCS 23/1 *et seq.* authorize such liens.[4] The Chands did not seek payment for rent until the day the judgment was entered, and even then they did not assert a lien interest.  Ex. 1, Par. 11. Williams disputed their lien interest and the undersigned firm did not pay them for any rent; they were only paid for their statutory lien for medical services, for medical records, and for their time testifying. Ex. 1, ¶13, Ex. 3, ¶16.

Plaintiff is not aware of any case law holding that a finding that a witness has an expectation of payment from proceeds of the litigation would warrant setting aside a judgment. Further, as stated *supra*, even if there was a disclosure issue, the case law indicates that is not the kind of issue that would support setting aside a 2-year old judgment pursuant to Rule 60(d)(3).

---

After this case was settled, plaintiff's counsel took no fee on either the medical expenses that had been paid prior to trial or on the unpaid medical expenses awarded by the Court because the Court found that a fee of 33 1/3 or 40% of those expenses would be excessive.  *See* Doc. 74, p. 25.  Counsel did not believe that the fee contract with the client could ethically be re-written to charge an hourly rate for the recovery of those expenses so no fee at all was charged for their recovery. *See* Exhibit 1, par. 16.

**A.** **There Is No Disclosure Issue; Dr. Chand Was Not a Retained Expert, and the Only Disclosure Requirement for Retained Experts Would be What They Would be Paid for Their Time Testifying in the Case**

This is not a "fraud on the court" or even a "perjury" issue. - there is nothing in this case Plaintiff is aware of suggesting the Chands failed to testify truthfully in answering any questions about any expectation of payment they actually had or thought they had.

This is not even a disclosure issue. Rule 26(a)(2)(B)(vi) requires that a ***retained*** expert write a report that includes "a statement of the compensation to be paid for the study and testimony in the case." The only compensation Dr. Chand received for his testimony from Plaintiff or his counsel was $2,600.00 for his time testifying at trial, and $385.00 for his deposition. Ex.1, par. 6. Further, Dr. Chand was not a retained expert. Since the 2010 amendment to Rule 26, and the addition to subsection (C), a treating physician like Dr. Chand is not required to write a report, nor state the compensation to be paid for his or her testimony. "With the amendment to subsection (C), '[a]n (a)(2)(B) report is required *only* from an expert described in (a)(2)(B).' Advisory Committee Notes, 2010 Amendment (emphasis added). Moreover, '[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony …' *Id.* The Advisory Committee Note lists, as frequent examples of an expert witness covered by subsection (C), 'treating physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.' *Id. Morrison v. Wal-Mart Stores, Inc.*, 321 F.R.D. 336, 338 (C.D. Ill. 2017).

Dr. Chand cannot be found to have perjured himself when Defendant did not ask any questions about any financial interest Dr. Chand could have in this case at trial, not even the unpaid medical bills it questioned him about in his deposition. In the July 5, 2016 deposition, defendant examined Dr. Chand extensively concerning a March 7, 2016 note that Williams

expected to be able to pay Chand's bill for treatment from a "settlement" of his Jones Act case. Ex. 9, dep. at page 30, line 12 to page 32, line 3. Dr. Chand testified that "I think Mr. Williams here was concerned because he had no insurance, and his payments were piling up. So, he is trying to reassure me, or the office, or somebody that there is a settlement, and that he doesn't want to be kicked out of the clinic for nonpayment, or pending payment." *Id.* Dr. Chand concluded, "So, he is trying to indicate that, you know, in his words, that there is a payment yet, or a settlement, or something is going, you know, something will make the charges current." *Id.* at p. 31, line 23-p. 32, line 3. Defendant asked similar questions about an April 2, 2016 note. *Id.* at p. 32, line 9-p. 33, line 1. Rather than follow up on this line of questions, defendant indicated he had no further questions. *Id.* at p. 33, lines 2-3. At trial, defense counsel asked no questions of Dr. Sunil Chand concerning expectation of payment of their medical charges or financial interest of any kind although defense counsel did cross-examine Dr. Sunil Chand with statements he had he had made in his deposition. *See* February 13, 2017 Trial Transcript at p. 152, lines 2-4 ("I was asking the question based on deposition testimony, so I don't have the page of February 10 - - .")

**B.    Dr. Chand's compensation for trial appearance, overnight stay and travel was appropriate**

Dr. Sunil Chand received $2,600.00 plus hotel expenses for his trial appearance, travel to and from court, including an overnight stay in Marion the night before trial. *See* Ex. 1, par. 6. Counsel paid Dr. Chand's hotel expense of $139.23 directly to Hampton Inn.  This is entirely proper. This Court's Local Rule 83.2(b) states, "The Rules of Professional Conduct adopted by this Court are the Rules of Professional Conduct adopted by the Supreme Court of Illinois as amended from time to time, except as otherwise provided by specific rule of this Court."  Illinois Rule of Professional Conduct 3.4(b), comment 3 says:

With regard to paragraph (b), it is not improper for a lawyer to pay a witness or prospective witness the reasonable expenses incurred in providing evidence or to compensate an expert witness on terms permitted by law. Expenses paid to a witness or prospective witness may include reimbursement for reasonable charges for travel to the place of a deposition or hearing or to the place of consultation with the lawyer and for reasonable related out-of-pocket costs, such as for hotel, meals, or child care, as well as compensation for the reasonable value of time spent attending a deposition or hearing or in consulting with the lawyer. An offer or payment of expenses may not be contingent on the content of the testimony or the outcome of the litigation, or otherwise prohibited by law.

Plaintiff's counsel also made the same arrangement for Dr. Nilima Chand and paid her $2,600.00 for her trial appearance. *See* Ex. 1, Par. 7. She appeared with her husband at the courthouse the first morning of trial, and they expected to both testify that afternoon. *Id.* Due to some kind of scheduling mix-up, Plaintiff had to put on his economist, Dr. Summary, after Dr. Sunil Chand testified, and the Chands left the courthouse. *Id.* Defendant introduced Dr. Nilima Chand's deposition at trial (Defendant's Exhibit 64) without objection from plaintiff. *Id.* Plaintiff's counsel did not request a refund of the $2,600 paid her trial appearance because she did show up at the courthouse and therefore spent substantial time away from her medical practice at my instance and because counsel thought the scheduling issue that appeared to have caused her to leave the courthouse was their responsibility. *Id.*

Counsel did not think that $2,600.00 was excessive for the trial appearance of a physician plus travel to and from the courthouse and an overnight stay prior to testifying. *See Grauvogl v. Roby*, 2:11-CV-333-WCL-PRC, 2012 WL 4959478, at *1 (N.D. Ind. Oct. 17, 2012) (finding that deposition charges of $900/hour for an internal medicine physician from Merrillville, Indiana "are reasonable".) Dr. Sunil Chand is an internal medicine physician in Farmington, Missouri. Ex. 9, Sunil Chand Deposition, p. 5, line 24-p. 6, line 1. Dr. Nilima Chand is also an internist in Farmington. Defendant's Trial Exhibit 64, Nilima Chand Deposition, p. 4, lines 21-22. Farmington is approximately two hours and twenty minutes from Benton. This means that Dr.

Chand spent over four hours and forty minutes just in travel time plus their appearance at the courthouse. Not counting the time spent overnight before trial, this is at least six hours, resulting in an hourly rate of about $433/hour - less than half that approved by the *Grauvogl* court for an internist in Merrillville. This does not cross over the line to a fee that is so excessive it is in reality a disguised bribe.

  **C.**  **Dr. Chand's Expectations Do Not Constitute a Contingent Fee for His Testimony, Would Not Have Supported Barring His Testimony, and Cannot Support Setting Aside a 2-Year-Old Judgment**

  The St. Francois County court, in its discussion of Dr. Chand's testimony, relied on a case that does not pertain to witnesses having lien interests, but to witnesses having contingency fee interests in the litigation. It cited *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, No. CIV.JFM-99-2573, 2000 WL 976800, at *1 (D. Md. June 19, 2000), in which the court dismissed claims, finding, "the assignments made by the tenants to AFS are void as a matter of public policy because they are champertous." Under those assignments, "AFS is to receive either forty or fifty percent of any judgment received from litigation instituted by AFS against the defendants. "… AFS employees will perform the audit services and, … AFS employees intend to appear as audit witnesses at trial." *Id.* The court held the assignments were invalid because, "Under California law contingent fee witness agreements are clearly void as violative of public policy." *Id.* at *2; *and see* ISBA Opinion Opinion No. 86-3 (July 7, 1986), affirmed July 2010 (finding unethical an expert witness fee that depends on "the outcome of the case. If very favorable, the finder's fee is enlarged; if unfavorable, the fee diminishes.")

  Liens, however, are not treated as contingent fee arrangements; while a witness may or may not have a lien paid depending on the outcome of the litigation, what courts have historically been concerned with is arrangements where the witness would receive an actual

percentage of the recovery. In *Taylor v. Cottrell, Inc.*, 795 F.3d 813 (8th Cir. 2015), the district court had barred a doctor from testifying, finding he had a "contingent" interest in the litigation because his office's bills for surgery exceeded $450,000.00. *Id.* at 815-16. The Eighth Circuit noted, "Additionally, the only authority the district court cited in support of exclusion was the Restatement (Third) of the Law Governing Lawyers § 117, which prohibits a lawyer from offering or paying an expert witness consideration contingent on the outcome of the litigation." *Id.* at 817. It noted the doctor was not being paid a "contingent" fee for his testimony; instead, like with the Chands, he had been paid a flat fee for his time testifying. "Therefore, to the extent the district court barred Dr. Odor from testifying because payment for his expert witness services was made contingent on the outcome of the litigation, it clearly erred." *Id.* at 817.

The Eighth Circuit also rejected the contention that Dr. Odor's testimony had to be barred because the likelihood of his getting the $450,000.00 back would be significantly greater if the plaintiff recovered in the litigation, stating, The only remaining interest Dr. Odor, himself, may have had is based on an increased likelihood of receiving payment through *the personal guarantee* and medical liens. But the practice of offering a personal guarantee for payment from litigation proceeds or placing a lien on potential litigation proceeds is not uncommon." *Id.* at 819. It added, " …nor have we found any authority holding that such an interest alone is a basis for exclusion." *Id.* If a $450,000.00 lien cannot justify barring a witness, the liens identified here would not have justified barring Dr. Chand's testimony, and they certainly cannot be used at this point to justify setting aside the judgment.

*Taylor*'s holding is consistent with the Rules of Evidence, Seventh Circuit jurisprudence, and other authority. A witness's financial interest in the outcome does not warrant the exclusion of that witness's testimony. *See* Fed. R. Evid. 601, 1972 Advisory Comm. Notes ("Included

among the grounds [of incompetency] abolished are … connection with the litigation as a party or interested person …); *U.S. v. Dawson*, 425 F.3d 389, 394 (7th Cir. 2005) (noting a contrary rule, one barring any witness with a financial interest in the litigation from testifying, would require barring parties from testifying); *Braun v. Lorillard Inc.*, 84 F.3d 230, 237-38 (7th Cir.1996) ("A litigant, or a litigant's CEO, or sole stockholder, or mother, or daughter is not, by reason of his or her or its relation to the litigant, disqualified as an expert witness."); *Haussknecht v. Claypool*, 66 U.S. 431, 433 (1861) (federal court required to follow Ohio statute allowing interested witnesses to testify, notwithstanding contrary rule in court below); Mo. Rev. Stat. 491.010.1 (interest in suit does not disqualify witness from testifying, but only goes to credibility); 735 ILCS 5/8-101 (same); IC 34-45-2-1 (same); *Shipley v. Shipley*, 274 Ill. 506, 511-512 (1916) (common-law rule abolished; interest goes to credibility, not admissibility); *Barnes v. Boatmen's Nat'l Bank of St. Louis*, 348 Mo. 1032, 1040-41 (1941) (rejecting argument that testimony of witness whose "fee was contingent upon the success of the litigation" had to be disregarded because "[i]f we did so, we would be compelled to infer that a party litigant's testimony was false because he is interested in the outcome of his litigation."); *Liberty Mut. Ins. Co. v. B. Frank Joy Co.*, 424 F.2d 831, 832 (D.C. Cir. 1970) ("disinterestedness is not required of expert witnesses any more than it is required of ordinary witnesses"); *Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1367 (9th Cir. 1976) (expert's interest "would affect the weight, not the admissibility of his testimony."); *Scheidt v. Klein*, 956 F.2d 963, 968 (10th Cir. 1992) (parties can give expert testimony); *Caldwell v. Olshan Found. Repair Co. of OKI, L.P.*, CIV.A. 5:05-462-JMH, 2007 WL 4732050 (E.D. Ky. 2007) (rejecting attempt to exclude witness who might receive $135,000.00 for repairs he would testify about; "The Court agrees that the issue of bias should be left to the jury in weighing Wolfe's testimony.").

> …Partin, perhaps even more than most informers, may have had motives to lie. But it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury.

*Hoffa v. U.S.*, 385 U.S. 293, 311 (1966).

Even when experts have been paid a contingent fee for their testimony, striking the testimony is inappropriate. *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir. 1988) (rule against paying an expert more for their testimony depending on case outcome "is a rule of professional conduct rather than of admissibility of evidence"); *United States v. Valona*, 834 F.2d 1334, 1343 (7th Cir.1987).

The notion that witnesses cannot testify if they have a financial stake in the outcome used to be the law. *See In re Estate of Babcock*, 473 N.E.2d 1316, 1318 (Ill. 1985), citing 2 J. Wigmore, Evidence sec. 575 (3d ed. 1940) ("At common law, all interested parties to a suit at law were disqualified from testifying for their cause."). Most jurisdictions abandoned this broad disqualification standard in the middle of the 19th Century. *Id.* (Illinois abandoned it in 1867).

Thus, whatever interest the Chands had in the litigation would not have justified barring their testimony, let alone setting aside a 2-year-old judgment. A judgment cannot be set aside more than a year out on the mere basis that additional evidence has been found that may have been useful to a litigant.

## VII. The St. Francois County Order Cannot Have Preclusive Effect In This Case

Although "a state court judgment may in some circumstances have preclusive effect in a **subsequent action** within the exclusive jurisdiction of the federal courts," *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (emphasis added), there is no authority to extend preclusive effect to a *prior* case, like the one at bar. *See also Haber v. Biomet, Inc.*, 578 F.3d 553, 557 (7th Cir. 2009) ("[I]ssue preclusion bars subsequent litigation of the same fact or

issue that was necessarily adjudicated in a former suit.") And casual findings, such as that Dr. Chand agreed to give favorable testimony only after Williams agreed to buy property from him (a finding that the record here shows is incorrect), are unnecessary to that court's decision and cannot form the basis for issue preclusion in this case. *See Cook County v. MidCon Corp.*, 773 F.2d 892, 898 (7th Cir. 1985) (collateral estoppel requires, *inter alia*, "the resolution of the particular issues was necessary to the court's judgment");

## VIII. The Post-Judgment Settlement and Satisfaction of Judgment Means The Court Has Already Provided, or Can Now, Provide Relief from the Judgment; The Court Does Not Have Jurisdiction Over the Settlement

After this Court entered judgment, the parties settled. *See* Doc. 76 (Notice of Settlement) and Doc. 77 (60-day Order). The settlement was not incorporated into the judgment and the Court did not reserve jurisdiction beyond July 6, 2018. The Seventh Circuit has explained that once a case has settled and the federal action dismissed, the district court lacks jurisdiction over the settlement agreement unless that agreement is incorporated into the judgment or the Court reserves jurisdiction to enforce the settlement.

> Thus if the judgment explicitly incorporates the settlement, or reserves authority to enforce the settlement, the court possesses ancillary jurisdiction. Id. 511 U.S. at ——, 114 S.Ct. at 1677. We concluded in *McCall–Bey* that the court also possesses jurisdiction if the judgment implicitly incorporates the terms of a settlement that itself provides for continuing jurisdiction. 777 F.2d at 1188–89. But the district court's judgment in this case does not incorporate the settlement or reserve power to enforce the parties' agreement. Instead it sets out the principal terms, directing Chicago to pay $25,000 and reinstate Lucille. Having put some but not all of the terms in the judgment, the district court has identified which it will enforce and which it will not. Violation of terms that are not in the judgment cannot be thought to flout the court's order or imperil the court's authority, and claims of such violations therefore do not activate the ancillary jurisdiction of the court. And although the judgment recognizes the parties' settlement, this case differs from *McCall–Bey* because neither the judgment nor the settlement so recognized reserves jurisdiction to enforce the terms of the settlement.

*Lucille v. City of Chicago*, 31 F.3d 546, 548–49 (7th Cir. 1994).

Because the settlement was not incorporated into the judgment, and the Court did not reserve jurisdiction beyond July 6, 2018, this Court lacks jurisdiction to set aside that settlement.

Fed. R. Civ. P. 60(b)(5) authorizes the Court to relieve a party or its legal representative from a final judgment for, among other things, that "the judgment has been satisfied, released, or discharged * * *." Here, Defendant filed a satisfaction of judgment on May 7, 2018, stating:

> Whereas, following the entry of judgment, the parties conducted additional settlement negotiations which led to agreement regarding resolution of the remaining issues in this case whereby plaintiff agrees to and does hereby waive and release defendant from all claims for attorney's fees and costs.

> **Therefore, satisfaction of the judgment is hereby acknowledged and the Clerk of the Court is hereby authorized and directed to cancel and discharge the judgment and any related interest and costs.**

Doc. 78 (emphasis added).

It appears from the court's docket that the Clerk never entered an order to cancel and discharge the judgment. The Court may still have authority to enter that relief.

### Conclusion

WHEREFORE, for the reasons set forth herein, plaintiff prays that the Court's Rule to Show Cause be discharged.

Respectfully Submitted,

ARMBRUSTER, DRIPPS, WINTERSCHEIDT & BLOTEVOGEL, LLC

By: _/s/ Roy C. Dripps_
      Roy C. Dripps #6182013
      Charles W. Armbruster #6211630
      Michael T. Blotevogel #6282543
      51 Executive Plaza Court
      Maryville, IL 62062
      Phone: (618) 208-0320
      Fax: (800) 927-1529
royd@adwblaw.com; charlesa@adwblaw.com;mikeb@adwblaw.com

and

LIESER LAW FIRM, LLC
Shaun M. Lieser, #6295198
1610 Des Peres Road, Suite 360
St. Louis, Missouri 63131
Phone: (314) 878-3200
Fax: (314) 732-1402
shaun@lieserlawfirm.com

***ATTORNEYS FOR PLAINTIFF***

**Certificate of Service**

I hereby certify that this matter was filed through the Court's CM/ECF system on July 18, 2020, which should cause service on all counsel of record.

By: _/s/ Roy C. Dripps_____